Commonwealth ex rel. Zeman *v.* Zeman, Appellant.

600

Argued April 20, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*David M. Cummins,* for appellant.

*Richard G. Miller,* and with him *John H. Donnan* of *Donnan & Miller,* for appellee.

Opinion by Cunningham, J., July 8, 1931:

Habeas corpus proceedings in the court below, at the relation of Adolph L. Zeman, the father of Sarah Helen Zeman, born December 11, 1928, resulted in an order awarding her custody and control to him over the protest of her mother, Natalie L. Zeman. The order contains a provision that the mother, if she so desires, may have possession of the child

between the hours of nine and five on Wednesdays and Saturdays of each week. This appeal is by the mother from that order. The parties were accorded a full and patient hearing by the learned judge of the court below, to whom they were personally known, and after a review of the voluminous testimony, a large portion of which had only a remote bearing upon the real issues involved, we are not persuaded that the order should be reversed or modified. Ordinarily, the age and sex of the child would weigh heavily in favor of placing it in the custody of its mother, but the circumstances disclosed in the evidence are unusual and the determining factor must be its best interest and permanent welfare.

Material facts are that the parties were married February 19, 1917, and have three children, a son, Robert, about twelve years of age, a daughter, Mary Ida, eight, and the baby, Sarah Helen, now nearly two and one-half. For years the family occupied a comfortable home at No. 138 N. Central Avenue, Canonsburg. The father is a practicing attorney at the Washington County Bar and his professional income is abundantly adequate to meet all his domestic and other obligations. Several years prior to the actual breach unfortunate domestic difficulties brought about strained relations between this husband and wife. Details need not be recited; it is sufficient to say that their differences were mainly temperamental and due in a large degree to the fact that the wife engaged rather extensively in stock market speculations and when her last pregnancy occurred desired to have it terminated, as she had been advised by several physicians that such an operation would be beneficial to her health. Her husband hesitated about giving his consent and this situation was a contributing factor to their marital discord. Matters culminated in a separation on June 15, 1929, when the baby was

only about six months old; the mother left her husband, children and home and went to live with her parents and brother at No. 17 W. College St., Canonsburg, around the corner and in sight of the Zeman home. The separation was not entirely the fault of the wife; quarrels, ending sometimes in physical violence, had been rather frequent. In September, 1929, she instituted desertion and nonsupport proceedings, which resulted in what seems to have been practically a consent order that her husband pay her $90 per month for her maintenance. Until that time the three children had been living with their father; shortly thereafter the two older children went to live with their mother and have been with her ever since although they are frequently back and forth between the two houses. When the separation occurred, the father employed a Mrs. Snowden, a widow about fifty years of age and a practical nurse of many years' experience, to take charge of the children. She receives a salary of $30 per week and the evidence is conclusive that she is most competent for the performance of her duties; she raised five children of her own and has been frequently employed to care for babies. The testimony of the present family physician is that the child "shows the evidence of very skillful and efficient care, both in the way of its care and its feeding." Servants were also employed to perform the usual household duties. It is in evidence that at the time of the hearing in the desertion proceedings the mother stated that she did not then desire the custody of the baby as she was not physically able to care for it. One of the unfortunate circumstances in the case is that she was injured in a trolley accident about three months prior to its birth and was obliged to undergo treatment on several occasions in a hospital. The testimony as to her physical condition mitigates to a considerable extent what on the surface would other-

wise seem to have been an abandonment of the child when she left their common residence. Her conduct, as shown by the evidence, during the fifteen months elapsing between the separation and the hearing of this case in the court below was not indicative of the usual attitude of a mother toward her infant child. For three or four months she came to see the baby frequently but in October, 1929, discontinued her visits, due to some extent to differences with Mrs. Snowden; but, looking at the testimony as a whole and considering the proximity of the houses, it is not too much to say that she has not displayed the affection for the child which common experience would lead us to expect under all the circumstances. The construction placed by the husband upon his wife's attitude toward the child was thus expressed in his testimony: "Q. Now, is it your contention that Mrs. Zeman doesn't care for this child? A. My contention is that she didn't want the child and my contention is that no mother who cares for a child could go past that house two or three times a day and live around the corner and not see that child for eleven months." At the hearing appellant charged her husband with infidelity but the evidence offered by her in support of this charge was not convincing. Moreover, the evidence of several reputable members of the bar cast rather serious reflections upon her credibility. A practical consideration which should be given some weight is the indication in the evidence that it is at least doubtful whether the mother and her parents and brother will be in receipt of a sufficient income for the adequate maintenance of the child. Without further discussion, we are of opinion that the child is now in a comfortable home and under the care of a competent nurse sincerely attached to it, and that the father is a proper person to have, at least for the present, its custody and control.

If there should be a material change in conditions as time goes on, the matter will always be under the control of the court below and appropriate orders may be made from time to time.

Order affirmed. Costs of this appeal to be paid by appellee.